IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,                  No. CR-S-05-0552 KJM

   vs.

STANLEY ORSON STODDARD,

       Defendant.          ORDER

_____/

On March 23, 2006, the parties appeared for argument on defendant's motion to dismiss the information based on pre-accusation delay and violations of the Speedy Trial Act. Roger Doyle, Certified Law Student, and Livia Morales, Assistant Federal Defender, appeared for defendant, who was present. Abram Watts, Certified Law Student, appeared for the United States.

I. Background

On December 27, 2005, the government filed an information charging Stanley Orson Stoddard with assaulting, resisting, and impeding an officer of the United States on April 24, 2004 at Beale Air Force Base in violation of 18 U.S.C. § 111, and with driving under the influence of alcohol on the same day in violation of 18 U.S.C. § 13 and California Vehicle Code § 23152(a).

1

1        The parties agree generally that defendant's truck arrived at the gates of Beale Air

2    Force Base around 11:00 p.m. on April 24, 2004, hit a set of barriers and fled the area as

3    Sergeant Kurtiss Kueter approached, asking the driver to turn off the engine.[1]   The truck

4    returned about twenty minutes later and once again Sergeant Kueter approached, shouting for the

5    driver to turn off the engine.  Kueter saw two men in the truck, one white and one Hispanic or

6    Indian.  As Kueter walked around to the driver's side of the truck, the truck lunged toward him

7    and then fled the scene.  The security office at Beale sought the assistance of the Yuba County

8    authorities in locating the truck.

9        Yuba County Sheriff's deputies found defendant and his truck in the early

10   morning hours of April 25.  Defendant smelled of alcohol and appeared to be under the

11   influence.  The deputies eventually arrested defendant for resisting them and for violating

12   conditions of a state parole term he was serving.  Defendant was taken to Marysville Hospital,

13   but not given any chemical test to measure his blood alcohol level.  He was booked into Yuba

14   County Jail, where he was interviewed by Air Force investigators later during the morning.

15       The Yuba County District Attorney's Office charged defendant with resisting a

16   peace officer.  He pleaded no contest and was released to his parole officer.

17   II.  Pre-Accusation Delay

18       In United States v. Marion, 404 U.S. 307, 324 (1971), the Supreme Court

19   recognized that pre-accusation delay could violate a defendant's due process rights if the

20   defendant shows the delay has prejudiced his right to a fair trial.

21

22

23       [1]   The government attached a declaration from Sergeant Kueter to its opposition to the
     motion to dismiss.  Although the defense did not submit any declarations or other material in support
24   of its Statement of Facts, it asserted its right to cross-examine Sergeant Kueter should the court rely
     on his declaration in resolving the motion.  The court need not rely on this declaration, however, for
25   the parties' factual statements correspond in sufficient particulars to allow the court to distill an
     undisputed factual underpinning for resolution of the pending motion.
26

1    There are two parts to a claim of pre-accusation delay.  The first is a showing of

2  actual prejudice.  United States v. Barken, 412 F.3d 1131, 1134 (9th Cir. 2005); United States v.

3  Mays, 549 F.2d 670, 677 (9th Cir. 1977).  A defendant bears the burden of showing actual

4  prejudice; this burden "is heavy and is rarely met."  Barken, 412 F.3d at 1134.

5    To meet his burden, defendant  must present "proof that demonstrates exactly how

6  the loss of evidence or witnesses was prejudicial."  Id.  The allegations of prejudice must be

7  "definite and not speculative," United States v. Martinez, 77 F.3d 332, 335 (9th Cir. 1996), and

8  "specific, concrete, and supported by evidence."  United States v. McMutuary, 217 F.3d 477, 482

9  (7th Cir. 2000).  Defendant  must show that the loss of witnesses or other evidence "has actually

10  impaired his ability meaningfully to defend himself."  United States v. Cederquist, 641 F.2d

11  1347, 1351 (9th Cir. 1981).  "The assertion that a missing witness might have been useful does

12  not show the 'actual prejudice' required by Marion."  Mays, 549 F.3d at 677.  Instead, defendant

13  must present "evidence about who these witnesses are or how the delay in the indictment

14  corresponds to their inability to testify," and must provide evidence "to support his contention

15  that . . . records were not available. . ."  United States v. Wright, 343 F.3d 849, 860 (6th Cir.

16  2003), cert. denied, 541 U.S. 990 (2004).  Moreover, a defendant may not be able to satisfy his

17  burden if there are substitutes for the evidence he claims is no longer available.  Cederquist, 641

18  F.2d at 1351.

19    The second part of a claim of pre-accusation delay is a balancing of the reasons

20  for and length of the delay against the prejudice.  Barken, 412 F.3d at 1134; Mays, 549 F.3d at

21  678.  However, "the district court cannot balance the reasons for the delay against prejudice, until

22  first deciding that prejudice has been sufficiently proved."  Martinez, 77 F.3d at 335.

23    Defendant lists five categories of evidence rendered unavailable by the delay in

24  filing the federal charges.  The court will address each in turn.

25  /////

26  /////

3

A.    The Hispanic Or Indian Man

According to the government, a Hispanic or Indian man was a passenger in the truck as it approached Beale; according to the defendant, this eyewitness cannot be found.  At oral argument, defense counsel suggested that this man would testify either that defendant was not in the truck or was a passenger when it hit the barricades and subsequently lunged at Kueter.  Defendant has presented no evidentiary support, not even his own declaration, to support this claim of prejudice; he has not committed to any version of the testimony he predicts the missing man could provide.

In any case, in Marion the Court recognized the statute of limitations is the "primary guarantee" against stale charges.  Marion, 404 U.S. at 322.  Generally, "lost testimony [is] adequately protected when the government brings charges within the applicable statutes of limitation."  United States v. Doe, 149 F.3d 945, 948 (9th Cir. 1998).[2]

Moreover, defendant has not borne his burden of showing prejudice.  He has presented nothing but speculation about the Hispanic man's probable testimony.  Indeed, he has not committed to a defense theory, proposing two scenarios which may (or may not) be established through the missing witness's testimony.   Without a single, coherent theory of the defense, defendant has not shown how the delay and the consequent inability to find the Hispanic man "has actually impaired his ability meaningfully to defend himself."  Cederquist, 641 F.2d at 1351.  Finally, defendant, if he chooses, may present this account through his own testimony; the Hispanic man's account is not the only evidence of defendant's claim.  That the witness may be helpful is insufficient to establish the prejudice necessary to support the motion to dismiss.  Mays, 549 F.3d at 677.

---

[2]  The statute of limitations in this case is five years.  18 U.S.C. § 3282.  At argument, defense counsel argued that California's shorter statute of limitations for misdemeanors should apply to count two, which is brought under the Assimilative Crimes Act.  Counsel has not filed a motion to dismiss on that ground, nor has he provided any authority for his contention.  Such a claim has been specifically rejected by another district court in United States v. Johnston, 699 F.Supp. 226, 229 (N.D. Cal. 1988).

B. <u>Surveillance Tapes From Feather Falls Casino</u>

In the moving papers, defense counsel claims that defendant met the Hispanic man at Feather Falls Casino; at argument, counsel argued that defendant would not have been driving the truck because his license had been suspended.  He averred that the casino's surveillance tapes would have supported these claims by showing who got into the driver's side of defendant's truck.  Nothing in the moving papers, however, establishes the basic premise: that the casino in fact conducted video surveillance that would have captured the images defense counsel described.

At the court's invitation, defendant submitted the declaration of Philip Oliver, Chief Investigator for the Federal Defender's Office.  Mr. Oliver avers that he spoke to a woman who identified herself only as Lisa, the Security Supervisor at Feather Falls Casino.  Lisa told him that "video tape recordings of the casino's surveillance cameras are kept only for seven days and then the recordings are destroyed . . . ."  However, "some video tapes are preserved indefinitely when it is shown that an 'incident' of some sort has occurred. . . ."  The supervisor told Mr. Oliver that no video tapes from April 24, 2004 have been preserved.  Declaration of Philip Oliver (Oliver Decl.) ¶ 3.  The declaration does not identify the area or areas of the casino subject to video surveillance.

The government argues that the delay in charging is not responsible for any loss of the casino's video tapes as evidence, because defendant's refusal to cooperate with the authorities following his arrest meant that law enforcement would not have been alerted to the potential evidentiary value of the video tapes.  This argument misses the mark: had defendant been charged within the seven-day period, defense counsel could have sought preservation of the original and release of copies of the casino tapes.

Nevertheless, defendant has not borne his burden of showing prejudice from the destruction of the tapes.  There is nothing in the record showing that video surveillance extended to the parking lot or, if it did, that the quality of any videos made would have enabled a viewer to

1    identify the driver of defendant's truck.  As noted above, defendant's unwillingness or inability

2    to commit himself to a single version of his defense also undercuts any showing of prejudice he

3    is attempting to make.  Once again, he has failed to present the specific evidence necessary for a

4    finding of prejudice to support his motion.  United States v. Gilbert, 266 F.3d 1180, 1187 (9th

5    Cir. 2001).

6                    C.  Surveillance Tapes From Beale

7                    The defense also argues that surveillance tapes from the gate at Beale Air Force

8    Base would be "important . . . to provide for Mr. Stoddard's defense," presumably by showing

9    that defendant was not driving the truck when it approached Beale.  Motion To Dismiss (MTD)

10   at 8.  In its opposition to the motion, the government claims that the base's surveillance system

11   had broken down and did not record the encounter on April 24, 2004.

12                   Defense Investigator Oliver avers that he contacted Michael Seymour, who was

13   the Non-Commissioned Officer in Charge of Beale's security on April 24, 2004 and who was

14   involved in the investigation of the underlying incident.  Seymour refused to provide specific

15   details about video surveillance at the base, but told Oliver that "either no video surveillance

16   tapes or no video surveillance tape that was relevant to their investigation was found at the time

17   of their investigation."  Oliver Decl. ¶ 4.  Seymour confirmed that if video tapes had been made

18   on April 24, 2004, they "most likely" would not have been preserved.  Id.  The defense asks the

19   government to indicate under seal whether video surveillance from April 24, 2004 exists.  The

20   government counters that the delay in filing "cannot prevent the loss of videos that never

21   existed."  Government Reply To Evidentiary Showing at 3.

22                   Here again, defendant has not borne his burden of showing prejudice.  First, he

23   has not shown that any relevant tapes exist.  Second, assuming that video surveillance was

24   conducted at Beale's main gate on April 24, 2004, the defense has not provided specific, concrete

25   allegations of prejudice, supported by evidence.  McMutuary, 217 F.3d at 482.  As before,

26   defendant has failed to make any evidentiary showing of what the tapes might show, but has

                                                          6

offered only his speculation that they might show that defendant was not driving the truck.  This argument is insufficient.

### D.   Tapes Of Telephone Calls To Yuba County Authorities

The second prong of defendant's motion to dismiss is based on the federal Speedy Trial Act, 18 U.S.C. § 3161.  Defendant argues that tapes of phone calls from Beale to Yuba County authorities would show, in essence, that the provisions of the Speedy Trial Act were triggered because the impetus for the state action came from the Beale authorities.  As discussed more fully below, however, even if the Yuba County authorities initially detained defendant as a courtesy to Beale authorities, defendant ultimately was arrested on state charges and as a state parole violator.  In this light, defendant has not shown how his inability to secure the tapes of any contact between authorities at Beale and those from Yuba County has undercut his ability to defend himself.

### E.   Blood Alcohol Testing

Under California Vehicle Code § 23612 (d)(1):

> a person lawfully arrested for an offense allegedly committed while the person was driving a motor vehicle in violation of . . . 23152 . . . may request the arresting officer to have a chemical test made of the arrested person's blood or breath for the purpose of determining the alcoholic content of that person's blood. . . .

Defendant argues that the delay in charging prevented him from demanding a chemical test to show that he was not under the influence of alcohol on April 24, 2004.

Defendant is charged under the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, the purpose of which is to conform the criminal law of federal enclaves to that of the surrounding jurisdiction when Congress has not defined criminal offenses or specified punishment.  United States v. Sharpnack, 355 U.S. 286, 291-92 (1958).  However, "only those California statutes making drunk driving a criminal offense and authorizing punishment therefor are assimilated into

1   federal law" under the ACA.  United States v. Best, 573 F.2d 1095, 1098 (9th Cir. 1978).[3]  In

2   United States v. Roberts, 845 F.2d 226, 228-29 (9th Cir. 1988), the Ninth Circuit held that

3   California's implied consent law is procedural and regulatory and accordingly is not assimilated

4   under the ACA.[4]  Because defendant would not have been entitled to the test even if he had been

5   arrested by federal authorities, he cannot show prejudice from any delay in arrest or charging.

6          Because defendant has not borne his burden of showing prejudice from the delay,

7   this court need not reach the second step of the pre-accusation delay inquiry and thus will not

8   engage in balancing any harm against the reasons for the delay.

9   III.  The Speedy Trial Act

10          Under 18 U.S.C. § 3161 (b):

11          Any information or indictment charging an individual with the
12          commission of an offense shall be filed within thirty days from the
            date on which such individual was arrested or served with a
13          summons in connection with such charges.

14   Defendant argues that because Yuba County deputies detained defendant only in response to

15   Beale's request and because investigators from Beale interviewed defendant the next morning, he

16   was "held in custody solely for the purpose of responding to a Federal charge."  See General

17   Order 92 ¶ 3(b)(i) (E.D. Cal.).

18          In United States v. Manuel, 706 F.2d 908 (9th Cir. 1983), FBI agents were

19   working with tribal authorities in investigating Manuel for murder.  After tribal authorities

20   arrested Manuel, federal agents questioned him.  Manuel was released by tribal authorities after

21   two days, but not charged in federal court until four months later.  He moved to dismiss on

22   Speedy Trial Act grounds.

23

24          [3]   Best has been abrogated on other grounds.  See Garcia v. San Antonio MTA, 469 U.S.
25   528, 562 n.4 (1985).

26          [4]   When Roberts was decided, California's implied consent law was California Vehicle
     Code § 23157.  The current statute is California Vehicle Code § 23612.

8

1      The Ninth Circuit rejected Manuel's argument, observing that "[r]egardless of the

2   degree of federal involvement in a state or tribal investigation and arrest, only a *federal* arrest

3   will trigger the running of the time period set forth in 18 U.S.C. § 3161 (b)." Id. at 915

4   (emphasis in original).

5      As in Manuel, the fact that the impetus for the state arrest may have come from

6   federal authorities and that federal investigators interviewed defendant does not convert his

7   arrest, or even his initial detention, into custody solely for purposes of federal prosecution.

8   Indeed, defense counsel does not dispute the government's claim that defendant was charged and

9   pleaded no contest in state court and thereafter released to his state parole agent as a parole

10   violator.  The federal involvement here does not change the nature of the arrest.

11      Relying on United States v. Woolfolk, 399 F.3d 590, 596 (4th Cir.  2005),

12   defendant suggests that federal authorities knew or should have known that the defendant was

13   restrained solely to answer to federal charges, a restraint that would implicate the Speedy Trial

14   Act.  The Woolfolk court compared this test to the "ruse" exception adopted in the Ninth Circuit.

15   Id. at 596 n.7.

16      In United States v. Benitez, 34 F.3d 1489 (9th Cir. 1994), the Ninth Circuit

17   recognized that while only a "federal arrest" triggers the provisions of the Speedy Trial Act, there

18   may some situations in which even a state arrest may bring a case within the ambit of the Act.  In

19   Benitez, the targets of a federal drug investigation attempted to kidnap federal undercover agents

20   and were arrested by other federal agents who were conducting surveillance, but then turned over

21   to sheriff's deputies who responded to a 9-1-1 call. Id. at 1491-92.  Defendants contended that

22   the initial arrest triggered the Speedy Trial Act.

23      The court in Benitez recognized that when state charges are merely a "ruse to

24   detain the defendant solely for the purpose of bypassing the requirements of the Act," the time

25   period may begin to run with the state arrest. Id. at 1494.  The court ultimately rejected the

26   defendant's claim, despite close coordination between state and federal prosecuting authorities,

9

1  because the state intended to proceed with its prosecution if the federal government did not and

2  only dismissed its charges when federal prosecutors made clear their intention to indict

3  defendants on the drug charges.  <u>Id</u>. at 1495.

4            In this case, in contrast, there is no showing of any close coordination between

5  state and federal officials.  Moreover, the state proceeded with its prosecution and with the parole

6  violation procedures without any suggestion that its determinations depended on federal actions.

7  Defendant has presented nothing suggesting that the state arrest and criminal proceedings were a

8  ruse to buy time for the filing of federal charges.

9            IT IS THEREFORE ORDERED that the motion to dismiss is denied.

10  DATED:  April 21, 2006.

11

12                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16  2/stoddard

17

18

19

20

21

22

23

24

25

26

10